**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CAASY PORCH | CIVIL ACTION NO. 25-CV-1755 |
| **Plaintiff,** | |
| | **JUDGE CARL J. BARBIER** |
| VERSUS | |
| | **MAGISTRATE JUDGE** |
| THE ADMINISTRATORS OF THE | **MICHAEL NORTH** |
| TULANE EDUCATIONAL FUND | |
| | **SECTION: J (5)** |
| **Defendant.** | |
| | **JURY TRIAL DEMANDED** |

<u>**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**</u>

Defendant, The Administrators of the Tulane Educational Fund ("Tulane") submits this memorandum in support of its Motion to Compel Plaintiff to provide a HIPPA authorization for her pre-termination mental health records. Additionally, Tulane seeks an award against Plaintiff, Caasy Porch, and her counsel, The Imbornone Law Firm, in the amount of $3,795.00 for the reasonable expenses and attorney's fees incurred in connection with this proceeding.

**BACKGROUND**

1. On December 17, 2025, Tulane served its First Set of Interrogatories and Requests for Production of Documents to Plaintiff.[1]

2. Tulane's Interrogatory No. 9 and Request for Production Nos. 15 and 16 seek information concerning Plaintiff's mental health from January 1, 2020, to present.[2]

3. On January 23, 2026, Plaintiff served her responses to Tulane's discovery requests.

---

[1] *See* Tulane's First Set of Interrogatories, attached as Exhibit A; Requests for Production, attached as Exhibit B.
[2] *Id.*

4. On March 3, 2026, Tulane sent Plaintiff's counsel a letter outlining deficiencies in Plaintiff's discovery responses, including Plaintiff's failure to execute a HIPPA authorization for mental health records from January 1, 2020, to present.[3]

5. On March 23, 2026, Plaintiff produced supplemental responses to Tulane's First Set of Interrogatories and Requests for Production of Documents.[4]

6. Plaintiff's supplemental responses cured most deficiencies raised by Tulane; however, Plaintiff continued to object to executing a HIPPA authorization for mental-health records, arguing the request is broad, unduly burdensome, invasive of privacy, and not limited to mental health treatment relevant to the claims or defenses in this action. Plaintiff further contended the records are not discoverable because Plaintiff seeks only "garden variety" emotional distress damages.[5]

7. On March 24, 2026, Tulane requested reconsideration of the mental health records issue and, in the alternative, to meet and confer again on the issue.[6]

8. On April 2, 2026, counsel for both parties conferred in good faith via teleconference and Plaintiff agreed to provide a HIPPA authorization for her post-termination mental health records, but declined to authorize discovery of her pre-termination mental health records.[7]

9. As of the date of this filing, Plaintiff has not provided a HIPPA authorization for her pre-termination mental health records.

---

[3] *See* Deficiency letter sent to Plaintiff's counsel, attached as Exhibit C.
[4] *See* Plaintiff's Supplemental Answers and Responses to Defendant's First Set of Interrogatories No. 9, attached as Exhibit D.
[5] Exhibit D, at pp. 10-11.
[6] *See* Correspondence, attached as Exhibit E, at p. 8.
[7] *Id.* at p. 2-8.

## LAW AND ANALYSIS

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." "Information is relevant if it 'encompasses any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir.1991) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). To determine proportionality, courts consider the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Singleton v. Cannizzaro*, No. CV 17-10721, 2020 WL 375600, at *2 (E.D. La. Jan. 23, 2020) (quoting Fed. R. Civ. Proc. 26(b)(1)).

## I.     Tulane's Motion to Compel is Warranted.

Under Rule 37, courts may compel a party to execute HIPPA authorizations for the production of medical records. Fed. R. Civ. Proc. 37; *Rogers v. Orleans Par. Sheriff Office*, No. CV 22-5303, 2025 WL 3760764, at *5 (E.D. La. Dec. 30, 2025) ("this Court has recognized, Rule 34, along with Rule 37, empowers federal courts to compel parties to sign written authorizations"). Prior to filing a motion to compel, the moving party must satisfy the meet and confer requirement. *See Shaw Grp. Inc. v. Zurich Am. Ins. Co.,* No. 12-257, at *3 (M.D. La. Sept. 3, 2014). "A fulsome Rule 37 conference requires more than sending a letter outlining deficiencies and waiting three days to file a motion to compel." *Herr v. Elos Envtl., LLC,* No. 25-387, at *7 (E.D. La. Aug. 12, 2025).

Here, on March 3, 2026, Tulane sent a detailed letter to Plaintiff's counsel outlining specific deficiencies in Plaintiff's discovery responses, including Plaintiff's objection to authorizing discovery of her mental health records.[8] The parties held a Rule 37 conference on April 2, 2026, to discuss access to Plaintiff's mental health records. Thereafter, Plaintiff has remained steadfast in refusing to provide a HIPPA authorization for her pre-termination mental health records.[9] As a result, court intervention is necessary.

**II.    Plaintiff's Pre-Termination Mental Health Records are Relevant Because Plaintiff Placed her Mental Condition at Issue.**

By seeking damages for emotional distress, Plaintiff has placed her mental condition at issue. *See e.g., Hardy v. Scandinavian Airlines Sys.*, No. CV 21-1591, 2025 WL 416106 (E.D. La. Feb. 6, 2025) (finding mental condition at issue where plaintiff alleges emotional distress damages); *Payton v. S. Fid. Ins. Co.*, No. 18-2365, at *2 (E.D. La. Nov. 5, 2018) (finding plaintiff waived "any privilege by asserting a claim for mental anguish damages"). "Basic fairness requires the other party be allowed 'to explore the truth of the [party's] allegations that he/she suffered physical or emotional distress as a result of the [other party's] conduct and to determine whether the [party] suffered any pre-existing physical or emotional distress" that may be the (or an) actual cause of the distress.'" *Hardy,* 2025 WL 416106, at *5 (citing *Stogner v. Sturdivant*, CIV.A. 10-125-JJB-CN, 2011 WL 4435254, at *6 (M.D. La. Sept. 22, 2011). When a plaintiff asserts emotional distress damages, medical records "are relevant to help the Defendant assess the Plaintiff's emotional distress claim and may provide the defendant with an alternative explanation for the Plaintiff's emotional distress claim." *Bacharach v. SunTrust Mortg., Inc.,* No. CIV.A. 14-

---

[8] *See* Exhibit C
[9] *See* Exhibit E, at p. 1.

0962, 2015 WL 1843007, at *7 (E.D. La. Apr. 22, 2015) (citing *Hingle v. Bd. of Adm'rs of Tulane Educ. Fund*, No. CIV.A. 95–0134, 1995 WL 731696, at *3 (E.D. La. Dec. 7, 1995).

Plaintiff claims she should not have to produce pre-termination mental health records because she is only claiming "garden variety" emotional distress, but her reliance on the "garden-variety" emotional distress exception is misplaced. While this Court has held that a plaintiff does not automatically place her mental condition at issue by seeking garden-variety damages, that principle does not apply where the plaintiff concedes the relevance of her mental health records. *See Rogers*, 2025 WL 3760764, at *7. In *Rogers*, this Court declined to apply the "garden-variety" exception because the plaintiff acknowledged her mental health records were relevant and subject to discovery. *Id.* at * 9 ("Unlike *Singleton,* Rogers has explicitly put her mental condition at issue, which she recognizes, and her mental health records are relevant and subject to discovery."). The Court found that the acknowledgment was dispositive where the plaintiff executed an alternative authorization permitting disclosure of psychotherapy notes. *Id.* at *7 n. 51.

That is precisely what Plaintiff has done in this case. Here, Plaintiff executed an alternative authorization form authorizing disclosure of her post-termination mental health treatment for anxiety and emotional distress allegedly caused by her termination. By doing so, Plaintiff has affirmatively conceded her mental health records are relevant. Yet Plaintiff attempts to draw an arbitrary and self-serving line, permitting discovery of post-termination mental health records (presumably to demonstrate connection to her termination), while refusing to authorize discovery of any pre-termination records on the ground that they are irrelevant. This position is inconsistent and improper. *Baqer v. St. Tammany Par. Gov't*, CV 20-980, 2023 WL 4846828, at *8 (E.D. La. July 28, 2023) (finding plaintiff's "unilateral limitation of authorization" to post-incident treatment

"improper and would preclude Defendants from discovering potentially relevant medical information").

Pre-termination mental health records are directly relevant to establishing Plaintiff's mental health baseline and to determining whether her alleged emotional distress was caused by the termination or instead reflects a continuation or exacerbation of preexisting conditions – or was caused by something other than Plaintiff's termination. By selectively permitting disclosure of only those records she believes support her claims, Plaintiff attempts to shield potentially critical information that bears directly on causation and damages. Such selective disclosure undermines her relevance argument and is inconsistent with the principles of fairness recognized by this Court.

**III.    Tulane's Request for Plaintiff's Pre-Termination Mental Health Records are Proportional to the Needs of the Case**

Once a plaintiff places her mental condition at issue, courts routinely permit discovery of mental health records reaching back at least five years. *Hardy,* 2025 WL 416106, at *10 (ordering production of medical records covering ten-year period); *Rogers*, 2025 WL 3760764, at *13 (ordering production of psychotherapy notes beginning five years prior to plaintiff's employment); *Stogner,* 2011 WL 4435254, at *6 (ordering production of mental health records spanning ten years).

Tulane's requests are modest in comparison. Tulane seeks Plaintiff's mental records beginning January 1, 2020, which is less than five years prior to Plaintiff's employment at Tulane and far narrower than the discovery compelled in *Hardy* and *Stogner*. [10] This limited temporal scope is directly tailored to the issues of causation and damages and is necessary to determine

---

[10] Tulane hire Plaintiff on July 12, 2024.

whether Plaintiff's alleged emotional distress was caused by the termination or instead reflects an ongoing or preexisting mental health condition.

**IV.     Tulane is Entitled To Verify Whether Plaintiff Received Pre-Termination Mental Health Treatment**

Plaintiff maintains she will not execute authorizations for pre-termination mental health records because she never sought mental health treatment prior to her termination. However, "[b]asic fairness requires the other party be allowed to . . . determine whether the [party] suffered any pre-existing physical or emotional distress." *Hardy,* 2025 WL 416106, at *5. Further, courts have rejected attempts to limit discovery based solely on a plaintiff's unverified representations regarding her own medical or mental health history. *See Thomas v. City of Vicksburg, Mississippi*, 3:22-CV-00542-HTW-LGI, 2023 WL 5111977 (S.D. Miss. Aug. 9, 2023) (ordering HIPPA authorizations for mental health records despite the plaintiff's claim that no such records exist).

Plaintiff's unverified assertion that no pre-termination mental health treatment exists is not a basis to deny discovery. To the contrary, it is precisely the type of claim Defendant is entitled to verify through the execution of the relevant HIPPA authorization. If Plaintiff is correct that no such treatment occurred, the requested discovery will simply confirm that fact. If not, any pre-termination treatment is plainly relevant to determining whether Plaintiff's alleged emotional distress reflects preexisting conditions.

**I.     Tulane Is Entitled To Reasonable Fees and Costs.**

If a motion to compel is granted, Rule 37(a) instructs the court to award expenses incurred in making the motion, including attorney's fees. *Skelton v. Liberty Mutual Fire Insurance Company,* No. 24-254 (M.D. La. Sep. 16, 2024), 749 F.Supp.3d 683. Expenses include time spent researching and drafting the motion, reviewing discovery in preparation for filing the motion, and

attempting to meet and confer prior to filing the motion. *See Bertram v. Progressive Se. Ins. Co*., No. 19-01478, at *4 (W.D. La. Feb. 8, 2021) (awarding $13,335.00 (38.1 hours at $350/hour) in attorney's fees). As shown in the accompanying Local Rule 57.2 Report, Tulane incurred $3,795.00 in reasonable attorney's fees attributable to this Motion to Compel, which is the direct result of Plaintiff's improper position regarding discovery of her pre-termination mental health records.

## CONCLUSION

For the foregoing reasons, Tulane requests the Court issue order Plaintiff to promptly execute a HIPPA authorization for her mental health records from January 1, 2020, to present and to pay Tulane $3,795.00 for reasonable fees and costs incurred in preparing and filing this Motion.

Respectfully Submitted:

*/s/ Leslie W. Ehret*
Leslie W. Ehret (La. Bar No 18494)
lehret@frilot.com
Christopher J. Sherlock (La. Bar No 41936)
csherlock@frilot.com
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone.: (504) 599-8203
Facsimile: (504) 599-8263
***Counsel for The Administrators of the Tulane Educational Fund***

**<u>CERTIFICATE OF SERVICE</u>**

I do hereby certify that on this 28th day of April, 2026, I electronically filed the foregoing pleading with the Clerk of Court using CM/ECF, which will send notification of such filing to all enrolled counsel of record.

*/s/ Leslie W. Ehret*
Leslie W. Ehret (La. Bar No 18494)
